# Mark Schlachet, Esq.
Tel:216-225-7559
email: markschlachet@me.com

**1249 East 35th Street**                                    **Admitted: OH, NY**
**Brooklyn, New York 11210**

March 4, 2020

**VIA ECF**
Hon. P. KEVIN CASTEL
United States Courthouse
Courtroom 11D
500 Pearl Street
New York, New York 10007

Re: 2238 Victory Corp. v. Fjallraven USA Retail, LLC, et al., No. 19-11733 (SDNY)

Dear Judge Castel:

      Undersigned is counsel to Plaintiff 2238 Victory Corp. (WIC") and writes in response to the 2 March pre-motion letter of Defendants Fjallraven USA LLC, Fjallraven USA Retail LLC, and Netrush, LLC. See ECF 18. Plaintiff hereby states unambiguously and unequivocally that it does not wish to amend its Amended Complaint.

      **Background**: Plaintiff is an Amazon third-party seller of hundreds of brands, only one of which, i.e. Fjallraven, filed successive IP complaints defaming Plaintiff's purely lawful downline sales of trademarked products. Defendants' pre-motion narrative represents that "[p]laintiff . . . resells **other entities' products** on Amazon.com. . . . [and that] Plaintiff is **not authorized** to resell Fjallraven products on Amazon or anywhere else." Both of those statements are misleading

      First, plaintiff is **authorized** by the First Sale Doctrine to sell **its lawfully acquired Fjallraven products** anywhere it chooses. Amended Complaint ("AC") ¶52. Second, Fjallraven and Netrush are Amazon sellers (AC ¶¶ 22,27) whose contracts with Amazon (AC ¶¶32,55) provide that their listings on Amazon may joined by other sellers of the same products bearing Fjallraven IP (AC ¶¶18, 37). Accordingly, defendants themselves **authorized** plaintiff to list Fjallraven products on their (or anyone else's) product detail pages on the Amazon platform. Third, as Amazon made clear in Congressional testimony, "[b]rands often conflate . . . authentic (not counterfeit) with 'authorized,'" a misnomer that Amazon does not countenance in practice or policy. AC ¶77. Accordingly, plaintiff is "**authorized**" to sell products embedded with Fjallraven IP on amazon.com because Amazon expressly and proactively creates and preserves that authorization in order to protect *competition*. *Id.*

The Honorable P. Kevin Castel
March 4, 2020
Page 2 of 4

**Jurisdiction**: with the advent of the Amended Complaint, plaintiff eliminated diversity jurisdiction as a basis to litigate this matter as of right in this court. Both Fjallraven USA LLC and WIC are New York domiciliaries. AC ¶¶13,17. We bring this to the court's attention in the knowledge that where RICO jurisdiction was lacking, the court would not rule on the sufficiency of state law claims absent diversity jurisdiction which, as stated, no longer applies hereto. *Alix v. McKinsey & Co.*, 404 F. Supp. 3d 827 (S.D.N.Y. 2019), citing *Lance v. Coffman*, 549 U.S. 437, 439, 127 S. Ct. 1194, 167 L. Ed. 2d 29 (2007) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S.83, 94-95, 118 S. Ct. 1003, 140 L. Ed. 2d 210 (1998)).

**Antitrust Claims:** responding to the original Complaint, defendants took the position that the "acid test' for competitor status was whether the parties "take sales away from each other." See ECF 8 at "Antitrust Claim," first paragraph. AC ¶¶17-31, however, detail the competitive tensions between defendants across the Amazon, Zappos, and Fjallraven's proprietary websites. AC ¶¶17-31 plausibly allege that defendants *do* take sales from each other; but Defendants ignore AC ¶¶17-31. Thus, defendants' flat-out statement that "Netrush is not a competitor of Fjallraven" is false. Rather, Defendants' theory seems to be that, notwithstanding defendants' status as competitors *inter se,* the court must view the Fjallraven-Netrush combination as vertical as a matter of law and, hence, not subject to the rule of *per se* illegality.

*Per se Claim*: Defendants considerable reliance on *Leegin Creative Leather Prods. v. PSKS, Inc.,* 551 U.S. 877, 888, 127 S. Ct. 2705, 2714 (2007)] is misplaced. *Leegin*, a price-fixing case, has never been held to overrule cases such as *Arnold Pontiac-GMC, Inc. v. Gen. Motors Corp.*, 786 F.2d 564 (3d Cir. 1986), where General Motors and its dealers, admittedly vertical parties, combined and conspired, *without* an express agreement, to restrict marketplace access. GM, held **not** to have acted independently, was denied summary judgment. Thus, *Leegin* does not control a *per se* challenge to a hybrid conspiracy amongst horizontal competitors to exclude discounters. This case is structurally analogous to *Arnold* rather than *Leegin.*

The instant conspiracy isn't about vertical price setting, but rather, it's about horizontal competitors destroying competition at the horizontal level—by blocking access to the Amazon platform-- and thereby effecting supra-competitive price levels within the relevant market. See *Doctor's Hosp. v. Se. Med. All.*, 123 F.3d 301, 308 (5th Cir. 1997)(manufacturer not acting unilaterally in best interest); *ES Dev., Inc. v. RWM Enters., Inc.*, 939 F.2d 547, 556-57 (8th Cir. 1991)(though facially vertical, inducement emanated from horizontals' intent to restrain competition); *Travelpass Grp. LLC v. Caesars Entm't Corp.*, No. 5:18-CV-00153-RWS-CMC, 2019 U.S. Dist. LEXIS 166542, at *5-6 (E.D. Tex. Sep. 27, 2019)(additional horizontal secondary conspiracies); *In re Tableware Antitrust Litig.*, 485 F. Supp. 2d 1121, 1124 (N.D. Cal. 2007)(though complaints vertical, part and parcel of effort to restrain trade); *U.S. v. All Star Industries,* 962 F.2d 465 (5th Cir. 1992)(cannot escape *per se* treatment by using a middle man).

***Rule of Reason Claim***: plaintiff alleges two relevant sub-markets within the broader relevant market for online retail sales, to wit: (1) ecommerce platforms, and (2) Amazon sales. (AC ¶¶99,100). Within these two submarkets defendants are *intra*brand—not *inter*brand-- competitors. Plaintiff has plausibly alleged (and documented) that all or substantially all

The Honorable P. Kevin Castel
March 4, 2020
Page 3 of 4

discounting Amazon resellers of Fjallraven products have been eliminated from Amazon.  AC ¶108-109.  Plaintiff has alleged a market wide impact of defendants' anticompetitive scheme.  AC ¶16.  As to the first submarket, plaintiff contends that defendants manipulated Amazon's exercise of its market power in the relevant platform submarket.  As to the second submarket for Amazon online sales, Fjallraven has controlled intrabrand competition, market wide, through its unlawful contract with Netrush.  Defendants' statement that plaintiff alleges harm to a competitor but not to competition is nonsense.  See *Flash Elecs. v. Universal Music*, 321 F.Supp. 2d 379, 393 (E.D.N.Y. 2004), quoting Graphic Prods. Distribs. v. Itek Corp., 717 F.2d 1560, 1563 (11th Cir. 1983): "intrabrand competition . . . [is] a significant source of consumer welfare because it alone can exert downward pressure on the retail price at which the good is sold."

   **Interference with Business Relationships:**  defendants' posit that falsely accusing a merchant of marketing counterfeit goods is not tortious, is not unfair, is not extreme or egregious.  Defendants fail, however, to cite a single case where a charge of counterfeiting did not meet the standard of "wrongful means."  Counterfeiting is far more serious than defendants admit: "As Professor McCarthy notes, counterfeiting is the 'hard core' or 'first degree' of trademark infringement that seeks to trick the consumer into believing he or she is getting the genuine article, rather than a 'colorable imitation.'" *Gucci Am., Inc. v. Guess?, Inc.*, 868 F. Supp. 2d 207, 242 (S.D.N.Y. 2012).   Under essentially identical circumstances, Judge Leonie M. Brinkema (E.D. VA) found an accusation of counterfeiting made to Amazon to be "very serious" indeed:

> The plaintiff has made, in my view, a very strong preliminary allegation that the claim that the product the plaintiff is selling through Amazon is counterfeit has no factual basis and that Incopro did not conduct any kind of reasonable investigation that would support having made that kind of a representation to Amazon . . . I mean, frankly, there are criminal statutes that sanction the selling of counterfeit goods . . .  That's a very serious statement to be made unless there's a genuine factual basis that supports that, and so I -- at this point, I'm not going to dismiss the claims.  (See Transcript of Proceedings herewith, p.7, ln.9, et seq.)

   Indeed, operating under similar "wrongful means" criteria, District Judge David O. Carter opined in judicial *dicta* that an accusation of counterfeiting (which did not exist in that case but does exist here) constitutes "wrongful means."  *Hand & Nail Harmony, Inc. v. ABC Nails & Spa Prods.*, 2016 U.S. Dist. LEXIS 188902, at *13 (C.D. CA  2016).

   **Trade Libel:** Defendants argue that greater specificity as to their false IP complaints to Amazon is required by *Alvarado v. Mount Pleasant Cottage Sch. Dist,*. 404 F.Supp.3d 763 (S.D.N.Y. 2019).  Even  assuming *Alvarado* applicable, WIC has in fact identified "counterfeit" as the derogatory statement, Fjallraven as the speaker, Amazon as the recipient, the date of the libel, 16 Complaint ID's, and the email address of the IP reporter. AC ¶79.  Exhibit 3 is a copy of Amazon's Policy Warning to WIC, confirming  as pled the conspirators' "counterfeit" accusations.   Since Fjallraven/Netrush are in privity of contract with Amazon, AC at ¶¶32,55, it follows that under Evidence Rule 801(d)(2)(C) Amazon's statements to plaintiff are non-hearsay and admissible to prove what defendants stated to Amazon, i.e. "counterfeit."

The Honorable P. Kevin Castel
March 4, 2020
Page 4 of 4

                Respectfully submitted,

                /s/Mark Schlachet
                Law Offices of Mark Schlachet
                3515 Severn Road
                Cleveland, Ohio 44118
                Telephone: (216) 225-7559
                Facsimile: (216) 932-5390
                Email: markschlachet@me.com

Attorney for Plaintiff 2238 Victory Corp.