UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
2238 VICTORY CORP.,

                        Plaintiff,                        19-cv-11733 (PKC)

      -against-                           OPINION
                                                         AND ORDER

FJALLRAVEN USA RETAIL, LLC,
FJALLRAVEN USA, LLC and NETRUSH, LLC,

                        Defendants.
-----------------------------------------------------------x

CASTEL, U.S.D.J.

          Plaintiff 2238 Victory Corp. ("Victory") purports to allege a per se violation of section 1 of the Sherman act by a manufacturer that sells its products both directly to consumers and also through a favored internet seller. It alleges that this manufacturer conspired with the favored seller to exclude Victory from the market. It also asserts claims under New York law. Defendants now move to dismiss for failure to state a claim.

          Victory is in the business of buying goods at wholesale prices from an authorized distributor and reselling them to consumers at lower prices than those charged by its competition. As described in its Amended Complaint (the "Complaint"), Victory has been an authorized seller on Amazon since 2010 and sells the products of approximately 70 brands. Victory describes itself as commercially successful, with a positive reputation among Amazon's customers.

          Defendants Fjallraven USA Retail, LLC and Fjallraven USA LLC (collectively, "Fjallraven") are affiliates of a Swedish company that specializes in outdoor equipment, including a popular line of high-end backpacks. They entered into an agreement with defendant Netrush LLC ("Netrush"), pursuant to which Netrush became Fjallraven's exclusive, authorized

Amazon seller. Under that agreement, Netrush sells Fjallraven products at a price set by Fjallraven, and offers for sale product designs not available to third-party sellers like Victory. Netrush also agreed to provide certain "brand control and compliance" services to Fjallraven, including "Amazon Brand Registry management."

Victory asserts that Fjallraven and Netrush conspired to block Victory from selling Fjallraven products on Amazon. As described in the Complaint, defendants filed meritless counterfeiting complaints with Amazon about the Fjallraven backpacks sold by Victory, which, pursuant to Amazon policies, had the effect of permanently barring Victory from selling Fjallraven products on Amazon. According to Victory, defendants' concerted actions were part of a scheme by two horizontal competitors to exclude a price-cutting competitor from the market.

Defendants move to dismiss Victory's complaint pursuant to Rule 12(b)(6), Fed. R. Civ. P. The Complaint's only claim under federal law asserts that Fjallraven and Netrush entered into a horizontal agreement to eliminate Victory as a competitor on Amazon, and thus engaged in conduct that is <u>per se</u> unlawful under section 1 of the Sherman Act, 15 U.S.C. § 1. As will be explained, a restraint to intrabrand competition under a so-called "dual distribution" arrangement is vertical in nature and not inherently anticompetitive, and is therefore reviewed under the rule of reason. Because Victory has not plausibly alleged a <u>per se</u> violation of the Sherman Act and has expressly abandoned its vertical claim invoking the rule of reason, defendants' motion to dismiss the Sherman Act claim will be granted.[1] The Court will decline to exercise supplemental jurisdiction over Victory's claims arising under New York law.

---

[1] The Complaint separately asserted a Count Two, which alleged a vertical agreement between Fjallraven and Netrush in violation section 1 of the Sherman Act to be analyzed under the rule of reason. (Compl't ¶¶ 98-109.) In its opposition brief, Victory abandons this claim. (Pl. Mem. at 20 ("Upon review of defendants [sic] brief and additional research and analysis, plaintiff withdraws and will no longer pursue its rule of reason claim.").)

BACKGROUND.

    A. <u>Overview of the Parties.</u>

Fjallraven designs and manufactures upscale clothing and backpacks. (Compl't ¶ 19.) The Complaint describes Fjallraven as "the Best of its Class" in the manufacture of outdoor products, and it is particularly known for a popular and high-quality backpack called the Kanken. (Compl't ¶¶ 59-61.)

Plaintiff Victory is a Staten Island-based company that purchases merchandise at wholesale from authorized distributors, then resells the products at prices lower than those offered by competitors. (Compl't ¶ 6.) According to the Complaint, Victory's discounted prices are a threat to manufacturers' profits, because manufacturers seek to sell their products at a standard, designated "Minimum Advertised Price." (Compl't ¶ 7.)

The Complaint asserts that firms like Victory operate within a "grey market" or "parallel market" for the sale of Fjallraven products, meaning that Victory participates in the purchase and sale of products outside of the manufacturer's authorized channels. (Compl't ¶¶ 48-50.) Victory alleges that such third-party sellers typically buy and resell goods for a profit, but do not have a direct relationship with manufacturers, and therefore are able to sell goods at lower prices than authorized sellers. (Compl't ¶ 50.)

Victory began doing business as a third-party seller on Amazon in November 2010. (Compl't ¶ 17.) The Complaint alleges that Amazon controls approximately 47% of online commerce in the United States and "serves as essential infrastructure for third party sellers . . . ." (Compl't ¶¶ 42-44.) Pursuant to the terms of a standard Amazon agreement, multiple sellers may offer the same product on Amazon. (Compl't ¶ 33.) Amazon permits all sellers to list the same product on the same page, which the Complaint asserts leads to price competition

that benefits consumers. (Compl't ¶ 38.) Amazon has adopted policies that permit both gray-market sellers and authorized sellers to do business on the site. (Compl't ¶¶ 51, 53.)

In order to become a seller on Amazon, Victory executed a standard agreement that permitted Amazon to terminate it as a seller for any reason or no reason. (Compl't ¶ 55.) Through Amazon, Victory has sold more than 500,000 individual product units of approximately 70 brands. (Compl't ¶ 56.)

Defendant Netrush was founded in 2006 to do business as a third-party seller on Amazon. (Compl't ¶¶ 22, 62.) Over time, it became "an industry leader in e-commerce marketplace services," and became the exclusive Amazon seller of several well-known brands. (Compl't ¶ 63.) In addition to acting as a seller, Netrush offers "Brand Control & Compliance Services" to manufacturers and suppliers, specifically including the performance of such services on Amazon. (Compl't ¶¶ 66-68.)

In or about spring 2019, Netrush became Fjallraven's exclusive, authorized Amazon seller, and began to sell designs of Fjallraven backpacks not readily available to other sellers. (Compl't ¶¶ 73-75.) The Complaint alleges that Netrush also agreed with Fjallraven that it would monitor Amazon for Fjallraven products sold below the manufacturer-authorized price. (Compl't ¶¶ 69-71, 73, 76.)

B. The Alleged Scheme to Block Victory from Selling Fjallraven Products.

In or around September 2019, defendants submitted 16 intellectual property complaints to Amazon, identifying the sales of purportedly counterfeit Fjallraven products by Victory. (Compl't ¶¶ 79-80.) The Complaint alleges that Victory thereafter "was expelled from the Amazon platform on October 19, 2019 as a direct result of those IP complaints." (Compl't ¶ 80.)

According to the Complaint, "[i]t is a fact of common knowledge" that once a counterfeiting complaint is submitted to Amazon, Amazon has a policy of expelling the seller and not reversing the expulsion unless the rights holder submits a letter "absolving" the accused seller. (Compl't ¶ 81.) According to the Complaint, Netrush and Fjallraven conspired to submit counterfeiting complaints in order to prompt Amazon to expel Victory. (Compl't ¶¶ 81-82.) Victory "remained expelled" from Amazon until December 5, 2019, and Victory asserts that the counterfeiting complaints against it "remain as a blight" on its account, in the event that "another unscrupulous seller[]" makes a complaint against it. (Compl't ¶ 85.) While Victory has resumed commerce on Amazon, it remains barred from selling Fjallraven products. (Compl't ¶¶ 85, 87.) The Complaint alleges that Victory's expulsion as a Fjallraven seller on Amazon resulted in consumer harm and the artificial inflation of Fjallraven prices. (Compl't ¶¶ 86-88.)

The Complaint invokes federal question jurisdiction and does not allege diversity of citizenship. (Compl't ¶ 12.) It brings two claims under section 1 the Sherman Act. Count One asserts a per se violation of section 1 and asserts that Netrush and Fjallraven are horizontal competitors that entered into a naked restraint of trade with the intent of excluding Victory from Amazon. (Compl't ¶¶ 90-97.) Now-withdrawn Count Two asserted a vertical relationship between Netrush and Fjallraven, and asserts that they have conspired to block third-party sellers from doing business on Amazon, activity that Victory asserts is unlawful under a rule-of-reason analysis. (Compl't ¶¶ 98-109.) Count Three alleges tortious interference with existing and prospective business relationships under New York law, and Count Four alleges trade libel under New York law. (Compl't ¶¶ 110-24.)

RULE 12(b)(6) STANDARD.

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Legal conclusions are not entitled to the presumption of truth, and a court assessing the sufficiency of a complaint disregards them. Id. Instead, the Court must examine only the well-pleaded factual allegations, if any, "and then determine whether they plausibly give rise to an entitlement to relief." Id. at 679. The Complaint must include non-conclusory factual allegations that "'nudge[ ]'" its claims "'across the line from conceivable to plausible.'" Id. at 680 (quoting Twombly, 550 U.S. at 570). "Dismissal is appropriate when 'it is clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law.'" Parkcentral Global Hub Ltd. v. Porsche Auto. Holdings SE, 763 F.3d 198, 208-09 (2d Cir. 2014) (quoting Conopco, Inc. v. Roll Int'l, 231 F.3d 82, 86 (2d Cir. 2000)).

"Conclusory allegations of 'participation' in a 'conspiracy' have long been held insufficient to state a claim." Anderson News, L.L.C. v. Am. Media, Inc., 680 F.3d 162, 182 (2d Cir. 2012). An allegation that defendants' conduct was a "horizontal conspiracy" amounting to a per se violation of the Sherman Act "is a legal conclusion that the Court does not accept as true on a motion to dismiss." Ace Arts, LLC v. Sony/ATV Music Pub., LLC, 56 F. Supp. 3d 436, 448 (S.D.N.Y. 2014) (Nathan, J.) (quotation marks omitted); accord Relevent Sports, LLC v. United States Soccer Fed'n, Inc., 2020 WL 4194962, at *8 (S.D.N.Y. July 20, 2020) (Caproni, J.).

VICTORY'S SHERMAN ACT CLAIM IS DISMISSED.

Count One asserts that Netrush and Fjallraven are liable for a per se violation of section 1 of the Sherman Antitrust Act, 15 U.S.C. § 1. (Compl't ¶¶ 90-97.) The Complaint's factual allegations describe purported vertical coordination on intrabrand retail prices, which is not a per se violation of the Sherman Act and is scrutinized under the rule of reason. Because the conduct described in the Complaint does not fall within the category of a per se violation, Count One will be dismissed.

Section 1 of the Sherman Act provides that "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce . . . is declared to be illegal." 15 U.S.C. § 1. "The rule of reason is the accepted standard for testing whether a practice restrains trade in violation of § 1." Leegin Creative Leather Prod., Inc. v. PSKS, Inc., 551 U.S. 877, 885 (2007); see also Continental T.V., Inc. v. GTE Sylvania Inc., 433 U.S. 36, 49 (1977) (the rule-of-reason analysis "weighs all of the circumstances of a case in deciding whether a restrictive practice should be prohibited as imposing an unreasonable restraint on competition.").

However, "certain business relationships are per se violations of the [Sherman] Act without regard to a consideration of their reasonableness." United States v. Topco Assocs., Inc., 405 U.S. 596, 607 (1972). "Per se treatment is appropriate '[o]nce experience with a particular kind of restraint enables the Court to predict with confidence that the rule of reason will condemn it.'" State Oil Co. v. Khan, 522 U.S. 3, 10 (1997) (quoting Arizona v. Maricopa Cty. Med. Soc., 457 U.S. 332, 344 (1982)). "This per se approach permits categorical judgments with respect to certain business practices that have proved to be predominantly anticompetitive." Northwest Wholesale Stationers, Inc. v. Pac. Stationery & Printing Co., 472 U.S. 284, 289

(1985); accord NYNEX Corp. v. Discon, Inc., 525 U.S. 128, 133 (1998) ("certain kinds of agreements will so often prove so harmful to competition and so rarely prove justified that the antitrust laws do not require proof that an agreement of that kind is, in fact, anticompetitive in the particular circumstances."). "Restraints that are per se unlawful include horizontal agreements among competitors to fix prices, or to divide markets." Leegin, 551 U.S. at 886 (internal citation omitted).

The Complaint describes a joint effort between Netrush and Fjallraven to obstruct Victory's ability to sell Fjallraven products on Amazon. The Complaint alleges that "Netrush and Fjallraven have an agreement between horizontal competitors to eliminate competition . . . a naked restraint." (Compl't ¶ 91; ellipsis in original.) Victory asserts that Netrush and Fjallraven entered a "joint collaboration to serve conspirators' economic interests and not for any procompetitive reason," resulting in lost sales and economic damage to Victory. (Compl't ¶¶ 95-97.) The Complaint alleges that Fjallraven maintains a retail website where consumers can purchase its goods directly, and that Netrush and Fjallraven therefore compete horizontally for online sales of Fjallraven goods. (Compl't ¶¶ 24-28.) The Complaint describes defendants' relationship as follows:

> Fjallraven is a competitor or potential competitor of Netrush as to the sale of products, which latter company simultaneously provides "Amazon clean up" services for Fjallraven, as discussed in detail, infra. Fjallraven thus has, simultaneously, a horizontal and vertical relationship with Netrush.

(Compl't ¶ 23; emphasis added.) According to Victory, Fjallraven and Netrush colluded to limit competition on Amazon for the sale of Fjallraven-brand products. (Compl't ¶ 24.) Specifically, they submitted counterfeiting complaints to Amazon about Fjallraven merchandise sold by Victory, resulting in Victory's temporary suspension from Amazon and permanent ban from

selling Fjallraven products.  (Compl't ¶¶ 79-85.)  The Complaint alleges that the average sales price of Fjallraven products on Amazon subsequently increased.  (Compl't ¶¶ 86-88.)

Where a defendant both manufactures and distributes a product, its coordination with its distributors is known as a "dual distribution" arrangement, and is evaluated as a vertical restraint under the rule of reason.  See Elecs. Commc'ns Corp. v. Toshiba Am. Consumer Prod., Inc., 129 F.3d 240, 243 (2d Cir. 1997) (defendants are in a vertical relationship subject to rule-of-reason scrutiny "if the distributor and manufacturer also compete at the distribution level, where, as here, the manufacturer distributes its products through a distributor and independently (so-called 'dual distribution' arrangements).") (collecting cases); Beyer Farms, Inc. v. Elmhurst Dairy, Inc., 35 Fed. App'x 29, 29 (2d Cir. 2002) ("[Plaintiff] alleged in its complaint that [defendants] were engaged in a dual-distributorship relationship, or both a vertical and horizontal relationship.  Had [plaintiff] alleged a purely horizontal relationship between [defendants], [plaintiff] would have alleged a per se violation of § 1 of the Sherman Act.  Because [plaintiff] did not so plead, its complaint was subject to scrutiny under the 'rule of reason.'") (summary order); Gatt Commc'ns, Inc. v. PMC Assocs., L.L.C., 2011 WL 1044898, at *2 (S.D.N.Y. Mar. 10, 2011) ("claims alleging a vertical relationship or mixed vertical and horizontal relationships must be evaluated under the rule of reason.") (Batts, J.).  The Complaint expressly alleges a dual distribution arrangement: it describes Fjallraven as both a manufacturer and direct seller of its product, in addition to its distributorship relationship with Netrush, with which it has "simultaneously, a horizontal and vertical relationship . . . ."  (Compl't ¶ 23.)  Because the Complaint describes a mixed vertical and horizontal relationship between Fjallraven and Netrush, any agreement between them is scrutinized under the rule of reason and is not categorized as per se unlawful under the Sherman Act.

Restrictions to intrabrand competition also have been held to be not inherently anti-competitive, and are therefore scrutinized under the rule of reason. Because the antitrust laws are primarily directed to interbrand competition, an intrabrand restraint may prompt a retailer to promote a competing brand's product, while also discouraging discount firms from free-riding on the marketing efforts and services of higher-priced intrabrand competitors. Leegin, 551 U.S. at 890-92. On the other hand, an intrabrand restraint may be unlawfully anti-competitive if it results in price-fixing or a seller cartel. Id. at 892-94. Because the effects of an intrabrand restraint can vary significantly, these restraints are scrutinized under the rule of reason and not categorized as unlawful per se. Id. at 898-99; see also United States v. Apple, Inc., 791 F.3d 290, 323 (2d Cir. 2015) ("The rule of reason is unquestionably appropriate to analyze an agreement between a manufacturer and its distributors to, for instance, limit the price at which the distributors sell the manufacturer's goods or the locations at which they sell them."); Bogan v. Hodgkins, 166 F.3d 509, 515 (2d Cir. 1999) ("The agreement here is far from a typical per se illegal restraint, consistent with the fact that antitrust law shows more concern to protect inter rather than intrabrand competition."); K.M.B. Warehouse Distributors, Inc. v. Walker Mfg. Co., 61 F.3d 123, 127-28 (2d Cir. 1995) ("Restrictions on intrabrand competition can actually enhance market-wide competition by fostering vertical efficiency and maintaining the desired quality of a product.").

The Second Circuit's K.M.B. decision is instructive. There, a distributor of automobile exhaust equipment alleged that a manufacturer and three rival distributors conspired to prevent plaintiff from distributing Walker-brand exhaust products. Id. at 126-27. There was no dispute that plaintiff alleged a vertical conspiracy subject to analysis under the rule of reason. Id. at 127. The Second Circuit explained that to prevail on its claim, the "plaintiff must also

show more than just an adverse effect on competition among different sellers of the same product ('intrabrand' competition) . . ." and that "[b]ecause the focus of our inquiry is the relevant market as a whole, restriction of intrabrand competition must be balanced against any increases in interbrand competition." Id at 127, 128.  At summary judgment, the evidence suggested a highly competitive intrabrand market, and that plaintiff's exclusion from the Walker brand led to enhanced interbrand competition because plaintiff continued to profitably offer a competing brand's exhaust products. Id. at 128.

K.M.B.'s analysis demonstrates why Victory's Sherman Act claim is appropriately scrutinized under the rule of reason and does not fall within any recognized per se violation.  Intrabrand restraints require a fact-intensive analysis to determine the effects on competition.  Here, the Complaint is bereft of allegations about the competitive landscape in backpack sales and any broader effect to competition arising from Victory's suspension as an Amazon seller of Fjallraven backpacks.[2]

As noted, a claimed restraint of trade is per se unlawful only in certain prescribed circumstances, where a court can make a categorical judgment that a business practice is predominantly anticompetitive. Northwest Wholesale Stationers, 472 U.S. at 289.  Because the

---

[2] Though it need not reach the issue, the Court separately notes that the Complaint fails in several respects to plausibly allege an unlawful restraint of trade under a rule of reason analysis, and that such a claim likely would have been dismissed.  The Complaint does not coherently define a relevant product market: It is unclear whether the proposed market is defined as all online retail sales of Fjallraven, the market for Fjallraven products on Amazon, or all retail commerce on Amazon itself.  (Compl't ¶¶ 26, 99, 100.)  The Complaint does not describe any broader effect on the market in backpack sales.  The Complaint fails to plausibly allege antitrust injury, and details the economic loss specific to Victory, including lost profits, marketing expenses, storage costs and "dead inventory."  (Compl't ¶ 97.)  See, e.g., NYNEX, 525 U.S. at 135 ("the plaintiff here must allege and prove harm, not just to a single competitor, but to the competitive process, i.e., to competition itself.").  The Complaint identifies a subsequent increase in price of Fjallraven backpacks among third-party sellers on Amazon (Compl't ¶ 88) but does not identify any effect on interbrand competition.  The Complaint expressly alleges that only Victory and no other seller was injured by defendants' actions.  (Compl't ¶ 89.)  For these and other reasons, Victory's claim invoking the rule of reason likely would have been dismissed, had it not been abandoned.

Complaint does not identify conduct that falls within a recognized per se violation of the Sherman Act, Count One is dismissed.

THE COURT DECLINES TO EXERCISE SUPPLEMENTAL JURISDICTION OVER VICTORY'S CLAIMS BROUGHT UNDER NEW YORK LAW.

The Complaint invokes federal question jurisdiction and does not assert subject matter jurisdiction by way of diversity of citizenship. (Compl't ¶ 12.) Defendants have urged that, in the event Victory's claim under the Sherman Act is dismissed, the Court should decline to exercise supplemental jurisdiction over the remaining state law claims. (Def. Mem. at 11-12.) In opposition, Victory maintains that it has plausibly stated claims for relief under state law, but does not address whether the Court should exercise supplemental jurisdiction. Both sides have had an opportunity to be heard, and neither has urged that economy, convenience, fairness or comity weigh in favor of exercising supplemental jurisdiction. Catzin v. Thank You & Good Luck Corp., 899 F.3d 77, 82-83 (2d Cir. 2018).

A district court may decline to exercise supplemental jurisdiction if it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). A district court has discretion as to whether it should exercise supplemental jurisdiction over state law claims when all federal claims have been dismissed. Catzin, 899 F.3d at 83. "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine – judicial economy, convenience, fairness, and comity – will point toward declining to exercise jurisdiction over the remaining state-law claims." Valencia ex rel. Franco v. Lee, 316 F.3d 299, 305 (2d Cir. 2003) (quoting Carnegie-Mellon University v. Cohill, 484 U.S. 343, 349-50 (1988)).

Here, the Court has dismissed Victory's sole federal claim. The remaining state-law claims allege tortious interference with existing and prospective business relationships and

trade libel under New York law.  (Compl't ¶¶ 110-24.)  Because the remaining claims solely arise under state law, principles of judicial economy, fairness, convenience and comity will be served best by declining to exercise supplemental jurisdiction over the remaining state law claims.

CONCLUSION

        Defendants' motion to dismiss Count One of the Complaint is GRANTED. (Docket # 32.)  Count Two of the Complaint is DISMISSED as expressly abandoned.  The Court declines to exercise supplemental jurisdiction over the remaining state law claims and they are dismissed without prejudice.  The Clerk is directed to enter judgment for the defendants and close the case.

        SO ORDERED.

                                                      P. Kevin Castel
                                          United States District Judge

Dated: New York, New York
           January 8, 2021